**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Guadalupe O. G., | No. 26-cv-820 (KMM/DLM) |
| Petitioner, | |
| v. | **ORDER** |
| Pamela Bondi, et al., | |
| Respondents. | |

This matter is before the Court on the Petition for a Writ of Habeas Corpus filed by Petitioner Guadalupe O. G. (Dkt. 1.) Petitioner asks the Court to order his immediate release from his current detention by federal immigration authorities or, in the alternative, to require those officials to grant him a bond hearing under 8 U.S.C. § 1226(a). Respondents argue that the Court should dismiss the petition for lack of jurisdiction or transfer venue to the Western District of Texas, San Antonio Division, because Guadalupe O. G. was not in custody in Minnesota when he filed his petition, or to deny the petition on its merits. For the reasons that follow, Defendants' requests to dismiss or transfer are denied and the Petition is granted.

## BACKGROUND

Guadalupe O. G. is a citizen of Mexico who resides in St. Cloud, Minnesota. (Dkt. 1 ¶ 12.) He has lived in the United States since September 2001. (*Id.*) He is a father of four children and the step-father to his wife's adult daughter, whom he has raised since she was two years old. All of these children and his wife are U.S. citizens. (*Id.* ¶ 14.) Guadalupe O.

1

G. filed an application for asylum in December 2023, which remains pending. (*Id.* ¶¶ 2, 4.) He has a pending petition for lawful permanent residency based on his relationship to his U.S. citizen family members. (*Id.* ¶¶ 13, 15 (referencing an "I-130 application" and "paperwork").)

On January 27, 2026, agents from Immigration and Customs Enforcement arrested Petitioner without a warrant. (*Id.* ¶ 15, 54.) Following his arrest, ICE transferred Guadalupe O. G. to El Paso East Montana Camp in El Paso, Texas. (*Id.* ¶ 7 (stating on information and belief that Guadalupe O.G. was transferred to Texas "less than 48 hours after his arrest"); Dkt. 7 at 2 (stating that ICE transferred Guadalupe O. G. to El Paso on January 28, 2026).) However, for much of the time between his arrest and the Petition's filing, O. G.'s counsel believed Petitioner to be in Minnesota. (Dkt. 8 ¶ 2 (stating that the ICE detainee locator showed Petitioner's location to be in Minnesota on January 28, 2026).) Only "[s]hortly before filing" the Petition on January 29, 2026 was the ICE detainee locator updated to reflect Guadalupe O. G.'s location in El Paso. (*Id.*; *see* Dkt. 1.) Counsel states that the Petition was filed in this District in part because he was unable to communicate with Guadalupe O. G. to, amongst other things, verify his location. (Dkt. 8 ¶ 2.)

## DISCUSSION

### I.  Subject Matter Jurisdiction

Respondents first challenge the Court's jurisdiction to address this matter because ICE transferred Guadalupe O. G. to the Western District of Texas before he filed the petition. Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), Respondents argue Guadalupe O. G.'s pre-filing transfer to Texas creates a "jurisdictional defect." (Dkt. 7 at

2–3.) To the extent Respondents suggest that Guadalupe O. G.'s transfer deprives the Court of subject matter jurisdiction, the Court disagrees.

In *Padilla*, the Supreme Court considered whether the petitioner, who the federal government transferred into military custody at a naval brig in South Carolina prior to his filing of a habeas petition, properly filed his petition in the Southern District of New York. 542 U.S. at 430–32. The Court held that the proper respondent in a habeas case challenging physical custody is the petitioner's "immediate custodian." *Id.* at 439, 442. Further, based on the language in 28 U.S.C. § 2241(a), the Court concluded that "jurisdiction over [the] habeas petition lies in [a particular district court] only if it has jurisdiction over [the immediate custodian]." *Id.* at 442. But in explaining these rules, the Court was clear that it was not addressing subject-matter jurisdiction. *Id.* at 434 n.7 ("The word 'jurisdiction,' of course, is capable of different interpretations. We use it in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court."); *see also id.* at 451 (Kennedy, J., concurring) (explaining that the "immediate custodian" and "territorial jurisdiction" rules "are not jurisdictional in the sense of a limitation on subject-matter jurisdiction").[1]

Although the Supreme Court has not subsequently clarified whether the immediate-custodian and territorial-jurisdiction rules are matters of personal jurisdiction or venue, nothing in *Padilla* suggests that this Court lacks *subject-matter jurisdiction* because a

---

[1] Although the Court did not ultimately resolve precisely the doctrine to which these rules belong, the *Padilla* concurrence indicates that they are "best understood as a question of personal jurisdiction or venue." 542 U.S. at 451 (Kennedy, J., concurring).

3

petition is filed in this District after a petitioner has already been transferred outside of Minnesota. The Court, therefore, declines Respondents' invitation to dismiss this matter for lack of subject-matter jurisdiction. *Mathena v. United States*, 577 F.3d 943, 946 n.3 (8th Cir. 2009) (stating that even though petitioner did not file his habeas in the district where he was confined that "defect did not deprive the district court of subject matter jurisdiction").

## II. District of Confinement

Respondents argue in the alternative that the Court should transfer Guadalupe O. G.'s petition to the Western District of Texas.[2] (Dkt. 7 at 2–3.) The Supreme Court has stated that "the general rule" for habeas petitions is that "jurisdiction lies in only one district: the district of confinement." *Padilla*, 542 U.S. at 443. But the high court has also recognized that when "a prisoner is held in an undisclosed location by an unknown custodian, it is impossible to apply the . . . district of confinement rules." *Id.* at 450 n.18. In those instances and others similar, Justice Kennedy, joined by Justice O'Connor, "acknowledge[d] an exception" to the district of confinement rule: "if there is an indication that the Government's purpose in removing a prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention . . .

---

[2] Respondents cite 28 U.S.C. § 1406(a) to support their alternative transfer request. (Dkt. 7 at 2.) Under § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

4

habeas jurisdiction would be in the district court from whose territory the petitioner had been removed." *Padilla*, 542 U.S. at 454 (Kennedy, J. concurring).

While a Supreme Court majority has not formally accepted such an exception, courts nationwide have recognized its existence. *See Ozturk v. Trump*, 777 F. Supp. 3d 26, 37–38 (D. Mass. 2025) (collecting cases); *Suri v. Trump*, 785 F. Supp. 3d 128, 144–45 (E.D. Va. 2025) (recognizing and applying the exception), *aff'd*, No. 25-1560, 2025 WL 1806692, at *4 (4th Cir. July 1, 2025) (same) (noting the Fourth Circuit's previous application of the exception in *United States v. Moussaoui*, 382 F.3d 453 (4th Cir. 2004)); *Tacuri ex rel. Guanoluisa v. Francis*, No. 25-CV-07012 (JAV), 2025 WL 3459377, at *3 (S.D.N.Y. Dec. 2, 2025) (recognizing and applying the exception); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 392 (D.N.J. 2025) (same). Courts in this District have as well. *See Aleksander B. v. Trump*, No. 26-cv-170 (KMM/DJF), 2026 WL 172435, at *2 (D. Minn. Jan. 22, 2026) (collecting cases). In applying this carve out, courts have considered the diligence of a petitioner's counsel in locating their client when filing a habeas petition. *See Suri*, 785 F. Supp. 3d at 143–44, *aff'd*, 2025 WL 1806692, at *5; *Francis*, 2025 WL 3459377, at *4; *Adriana M.Y.M. v. Easterwood*, No. 26-cv-213 (JWB/JFD), 2026 WL 184721, at *2 (D. Minn. Jan. 24, 2026).

The exception to the district of confinement rule applies in this case. Here, counsel states that he was introduced to Guadalupe O. G.'s family and received the requisite information of his arrest and detention on January 28, 2026. Counsel moved exceedingly swiftly and, within a day, had prepared this Petition and was able to file it. For most of that time, counsel was operating with the understanding that Guadalupe O. G. remained in

5

Minnesota, unable to communicate with him and relying solely on the ICE detainee locator for O. G.'s whereabouts. Despite this diligence, counsel did not learn that O. G.'s location had changed until "[s]hortly before" the filing of the Petition. This information, held only by Respondents, was not made available until a day after O. G. was moved to Texas. Respondents also did not provide counsel any alternative opportunity to track O. G.'s location.

While this case is a close call, this set of circumstances presents the type of scenario that the district of confinement exception envisions: Respondents' ongoing shell game hides detainees' locations and leaves their counsel and families to chase ghosts at the whims of Respondents' detention decisions. So, despite the eleventh-hour disclosure of Guadalupe O. G. updated location, the Court concludes that this District is the correct venue for this Petition, thanks in part to counsel's diligence.

### III.  Merits

Finally, the Court considers the merits of the Petition. This case is one of many filed in recent months in this district challenging the application of § 1225(b)(2) to aliens who are already in the United States, either having entered without inspection or having been previously released pursuant to 8 U.S.C. § 1226 or another statute. This Court has previously held that, because such people are not "seeking admission," as set forth in § 1225(b)(2), that provision—which mandates detention—does not apply to them. *See, e.g.*, *Belsai D.S. v. Bondi*, No. 25-cv-03682 (KMM/EMB), 2025 WL 2802947 (D. Minn. Oct. 1, 2025). The same legal conclusion has been adopted by countless district courts around the country in similar cases, by the only Court of Appeals to have decided the issue, and by

many courts in this district. The Respondents' position is that *Belsai D.S.* and the many other cases reaching the same conclusion were wrongly decided. The government points out, correctly, that other courts have ruled differently and that the issue is currently pending before the Eighth Circuit, and asks this Court to reconsider its previous decision.

Although the Court has considered the arguments raised by the government, and reviewed the authority cited, the Court declines to repudiate its analysis from *Belsai D.S.* and instead continues to follow the analysis of the strong majority of courts to have considered the matter. Of course, these issues are complex, and the government's arguments are not frivolous. But the Court continues to believe that the better reading of the relevant statutory scheme is that § 1225(b)(2) does not apply to Guadalupe O. G. or others who are similarly situated, and his mandatory detention under that provision is not supported by the law.

The Court also notes that Guadalupe O. G.'s pending asylum petition does not alter the Court's conclusion that detention under § 1225(b)(2) is not appropriate. As U.S. District Court Judge Eric Tostrud recently noted in *Ahmed M. v. Bondi et. Al*, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *2 (D. Minn. Jan. 5, 2026) that "several courts have determined that asylum applications filed in like circumstances do not change the outcome." *Id.* (collecting cases). The reasoning in Judge Tostrud's opinion, and those of the cases he references, is sound, and the Court declines to find that Guadalupe O. G.'s application for asylum triggers mandatory detention under § 1225(b).

Guadalupe O. G. alleges that he should be immediately released or, at minimum, granted a bond hearing. The Court concludes that immediate release is appropriate in this

case. The government has not claimed to have a "warrant issued by the Attorney General" supporting his recent arrest, nor has the government produced one to the Court. As Judge Tostrud also explained, "[s]ection 1226 provides that '[o]n a warrant issued by the Attorney General, an alien may be arrested and detained.'" *Id.* Judge Tostrud concluded that the issuance of a warrant is a necessary prerequisite to even discretionary detention under § 1226(a), citing several decisions from other districts. *Id.* In *Ahmed M.*, like here, the petitioner had been rearrested with no warrant, and there were no allegations of a violation of the conditions of his previous release. Therefore, the appropriate remedy in *Ahmed M.* was immediate release rather than a detention hearing. *See also Juan S.R. v. Bondi*, 26-cv-05 (PJS/LIB) (Order, Dkt. 8, Jan. 12, 2026) (same). And although *Ahmed M.* was specifically cited in Guadalupe O. G.'s Verified Petition, Respondents do not grapple with this argument for immediate release rather than a bond hearing. Similarly, because the Court here has before it neither the administrative warrant contemplated by § 1226, nor a suggestion that Guadalupe O. G. has done something that justifies revoking his prior release, release is the correct remedy.

## ORDER

Based on the above, and on the full record before the Court, **IT IS HEREBY ORDERED THAT:**

1. Petitioner Guadalupe O. G.'s Petition for a Writ of Habeas Corpus (Dkt. 1) is **GRANTED**.

2. The Court **DECLARES** that Guadalupe O. G. is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and **ENJOINS** Respondents from denying release or other relief on the basis that he is subject to such mandatory detention.

3. Because the Court ordered Guadalupe O. G.'s return to Minnesota on January 29, 2026 (Dkt. 4), the Court assumes that he is currently in the District. The Court **ORDERS** Respondents to immediately release Guadalupe O. G. in Minnesota, **with all of his personal effects seized during his arrest, including but not limited to immigration paperwork, and without conditions**.

4. Further, the Court **ORDERS** Respondents file a notice on ECF **by no later than 5:00 PM on Thursday, February 5, 2026**, certifying that Guadalupe O. G. has been returned to Minnesota and released. If Guadalupe O. G. has not been returned to Minnesota and released by that time, then Respondents shall advise the Court about the reasons his return and release has not occurred, and the specific steps Respondents are undertaking to ensure his immediate return and release in Minnesota.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: February 4, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge